IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL MURPHY, | : | |
| | : | Civil Action |
| Plaintiff, | : | |
| | : | Case No. |
| vs. | : | |
| | : | |
| SPIRE INVESTMENT PARTNERS, | : | **COMPLAINT AND JURY DEMAND** |
| LLC, | : | |
| | : | |
| Defendant. | : | |

This is an age discrimination case under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA") brought by Paul Murphy ("Mr. Murphy"), who was fired because of his age after a decade of successful service with Defendant Spire Investment Partners, LLC ("Spire" or "defendant"). Mr. Murphy seeks recovery for all damages suffered from this sudden and wrongful termination, including lost wages and benefits, compensatory damages, liquidated damages, and attorneys' fees and costs.

## PARTIES

1.  Mr. Murphy resides in Newlin, Pennsylvania, within this District, and is a citizen of the Commonwealth of Pennsylvania.

2.  He is a graduate of Villanova University, with a Bachelor of Science degree in accounting.

3.  He is a veteran of the U.S. Air Force, where he served as a fighter pilot and trainer of fighter pilots, rising to the rank of Captain before being honorably discharged after 10 years of active and reserve duty.

4.    Mr. Murphy has more than 20 years of experience in the financial service industry, including advisory and managerial work at Merrill Lynch and Morgan Stanley before joining Spire.

5.    The defendant, Spire Investment Partners, LLC, has its principal place of business and headquarters at 1840 Faraday Drive Suite 105, Reston, Virginia 20190. The defendant is a Virginia limited liability corporation and a citizen of Virginia.

6    Spire and its financial advisors manage more than $3 billion in client assets, and the firm has revenues of more than $20 million per year.

7.    Spire maintains branch offices and financial advisors in 16 states, including operations in this District, and does business with clients in 40 states, including Pennsylvania, and other countries.

## JURISDICTION AND VENUE

8.    This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and under the Age Discrimination in Employment Act, 29 U.S.C. § 626(c).

9.    This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the plaintiff and the defendant are citizens of different states, Pennsylvania and Virginia, respectively.

10.    This Court also has supplemental jurisdiction over the state law cause of action pursuant to 28 U.S.C. § 1367, as the state law claims are so related to the federal claims that they form part of the same case or controversy.

11.    This Court has personal jurisdiction over the defendants as they chose to employ plaintiff, their Managing Director, in this District for 10 years, many of the acts complained of

and giving rise to his claims, including without limitation plaintiff's termination of employment by defendant by telephone, occurred in this District, and defendant maintains operations and employees in this District.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Before filing this action, Mr. Murphy exhausted his administrative remedies under the ADEA and PHRA by timely filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission, which was dual-filed with the Pennsylvania Human Relations Commission.

14.     On June 11, 2018, which was more than one year after the filing of the charge, the EEOC issued a Notice of Right to Sue, entitling Mr. Murphy to bring this action.

15.     Mr. Murphy filed this action less than 90 days after receiving the Notice of Right to Sue.

## PLAINTIFF'S SUCCESS AT SPIRE

16.     In July of 2006, Mr. Murphy began employment with Spire as the Business Development Officer, being tasked with developing and expanding Spire's existing wealth management business.

17.     Over the years, his responsibilities at Spire expanded to include overseeing both the organic and external growth of the firm, the development and expansion of the business model, and the nurturing and development of key industry relationships.

18.     Mr. Murphy had tremendous success at Spire, helping grow the firm from $600

million in assets under management to approximately $3 billion in assets under management.

19.     In recognition of Mr. Murphy's success, Spire promoted him to Vice President, then to Senior Vice President, and ultimately in 2010 to the role of Managing Director. He acted as the number two person in the leadership team, reporting directly to David Blisk, the CEO and owner of the firm.

## AGE DISCRIMINATION AT SPIRE

20.     After Mr. Murphy and other executives aged into their 50s, Mr. Blisk began revealing his disfavor of older workers with many discriminatory comments and actions.

21.     For example, he told Mr. Murphy that he was "too old" for his position and "too old" to recruit new financial advisors to the firm.

22.     Among Mr. Blisk's other ageist comments were words to the effect of:

a.  Referring to other senior management (which at the time was all aged 50 or older) as "too old," including Sue McKeown, Stuart Brawley, Steve Donald and Tim O'Leary;

b.  Commenting that Ms. McKeown should be replaced by someone younger, and asking her "what are your retirement plans?";

c.  Describing his vision of the company as trending younger -- "I want a bunch of 20-somethings around here, not all these old people";

d.  Commenting that "our firm is too old, look around here";

e.  When recruiting for a new Chief Operating Officer position stating that he "needed someone younger" than internal candidates;

f.  Asking at least two members of senior management about their retirement plans and, on information and belief, pressuring them to resign rather than be fired; and

g.  Describing a new office design as targeting the recruitment of younger employees. "I built this office for millennials, not the current staff."

23.  Mr. Blisk also asked Mr. Murphy about his retirement plans before terminating his employment on August 8, 2016.

24.  After terminating Mr. Murphy, Spire hired Robert Lord as Chief Operating Officer (assuming some of the duties Mr. Murphy handled). Mr. Lord was 47 when hired, substantially younger than Mr. Murphy or the prior Director of Operations.

25.  Also, shortly before terminating Mr. Murphy, Spire hired Cindy Hamill as Vice President, Business Development Officer, assuming some of Mr. Murphy's duties despite her lack of experience. Ms. Hamill was substantially younger than Mr. Murphy.

26.  Spire also hired William Chao in December of 2016 to serve as Director of Operations. He was approximately 45 when hired, and substantially younger than Mr. Murphy.

27.  Mr. Blisk also revealed his willful disregard for equal employment opportunity laws with frequent disparaging comments about foreigners, about employees who did not share his conservative religious or political views, and about women with health and weight issues.

28.  Reflecting the company's favoritism of younger workers, more than sixty percent (60%) of its employees are under the age of 40, including the recent replacement of several older executives with younger hires.

## PLAINTIFF FIRED DUE TO AGE

29.     Mr. Murphy received consistently positive feedback and promotions throughout his employment with Spire and was often tasked with resolving problems and handling executive team matters that Mr. Blisk could not. In fact, he was seen as a potential short-term or long-term successor of the CEO, Mr. Blisk.

30.     Mr. Murphy was never disciplined, demoted, put on a performance improvement plan, counseled on a need to improve his performance, or otherwise told he was not meeting goals or expectations of the firm.

31.     Yet, on August 8, 2016, Mr. Blisk terminated the employment of Mr. Murphy without warning and by conference call.

32.     Mr. Blisk claimed the termination was the result of a "succession planning" exercise, yet he had never reviewed the draft findings of the consultant's succession planning report with Mr. Murphy or asked him about it, despite allegedly having the report for two months before firing Mr. Murphy.

33.     Rather than focusing on Mr. Murphy, a version of the report later produced by Spire identified widespread dysfunction at the firm, including the lack of a board of directors, the fact that the CEO (Mr. Blisk) "routinely inserts himself into functional decisions that ideally should be the purview of others on the ELT [executive leadership team]," a lack of collaborative environment among the ELT, "a level of distrust bordering on animosity between the functional areas," a lack of professional or measurable corporate goals or objectives, "little proactive communication with the advisor population," the need to reevaluate the Chief Compliance Officer role, and the characterization of the Finance Director as someone who "operates more like a controller rather than a Chief Financial Officer."

34.   Rather than firing Mr. Murphy, the report advised Mr. Blisk to "provide the ELT with an opportunity to demonstrate their skills in order to assess their true effectiveness," and set "expectations for performance and structure."

35.   While the report also had critical comments relating to Mr. Murphy and other older executives, these comments reflected the age-discriminatory bias of the process, which repeatedly focused on the aging of Spire's sales force and the ages of the Firm's officers and employees, including Mr. Murphy.

36.   The consultant made clear that his views were biased, commenting that "the [Executive Leadership Team] is nearing the twilight of working years" (even though most were in their 50s and expected to work at least another 10 years) and stating it was "imperative that Spire further develop this next level of leadership" to take over from the existing, older team.

37.   If Mr. Murphy had been substantially younger (in his 30s or 40s), he would not have been terminated.

38.   Spire terminated Mr. Murphy because of his age.

39.   Spire's age discrimination against Mr. Murphy was willful and in knowing violation of the law.

40.   As a result of Spire's unlawful and discriminatory conduct, Mr. Murphy has suffered substantial economic and emotional damages, including loss of wages, loss of benefits, loss of earning power, loss of enjoyment of life, damage to his reputation, and emotional distress and suffering.

## COUNT I
## AGE DISCRIMINATION IN EMPLOYMENT ACT

41.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

42.     With more than 20 employees, Spire is a covered employer under the ADEA.

43.     At age 57 at the time of termination, Mr. Murphy was a covered employee under the ADEA.

44.     Spire terminated the employment of Mr. Murphy because of his age.

45.     That termination violated the ADEA.

46.     Spire acted in willful and knowing violation of the ADEA.

47.     Spire's actions caused Mr. Murphy the loss of wages and benefits.

## COUNT II
## PENNSYLVANIA HUMAN RELATIONS ACT

48.     Plaintiff re-alleges and incorporates by reference all allegations in the preceding paragraphs.

49.     With more than 4 employees, Spire is a covered employer under the PHRA.

50.     At age 57 at the time of termination, Mr. Murphy was a covered employee under the PHRA.

51.     Spire terminated the employment of Mr. Murphy because of his age.

52.     That termination violated the PHRA.

53.     Spire's actions caused Mr. Murphy the loss of wages and benefits, loss of enjoyment of life, emotional distress, damage to his reputation, and other compensatory

8

damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paul Murphy therefore requests the following relief:

1.    Judgment declaring that Spire violated the Age Discrimination in Employment Act, as set forth above;

2.    Judgment declaring that Spire violated the Pennsylvania Human Relations Act, as set forth above;

3.    An award of damages for the lost pay and employee benefits plaintiff suffered as a result of Spire's wrongful conduct, including back pay and front pay;

4.    An award of damages for the loss of earning capacity caused;

5.    An award of damages for the severe emotional distress, loss of enjoyment of life, and damage to his reputation;

6.    An award of liquidated damages under the ADEA equal to the sum of lost pay and employee benefits, plus interest.

7.    An award of plaintiff's fees and costs in this action, including without limitation his reasonable attorneys' fees and costs;

8.    An award of any negative tax consequences from a lump sum payment of damages;

9.    An award of pre-judgment and post-judgment interest; and

10.    Such other relief as the Court deems just and appropriate.

9

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims so triable.

HOMANS PECK, LLC

By: _s/Michael D. Homans_
Michael D. Homans
1835 Market St., Ste. 1050
Philadelphia, PA 19103
(215) 419-7477
*Attorneys for Plaintiff, Paul Murphy*

Dated: July 20, 2018